# No. 24-10631-H

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

UNITED STATES OF AMERICA,

*Plaintiff/appellee,*

v.

LUCIA GATTA,

*Defendant/appellant.*

On Appeal from the United States District Court
for the Southern District of Florida

**APPELLANT'S INITIAL BRIEF**

RICHARD C. KLUGH, ESQ.
Counsel for Appellant
40 N.W. 3rd Street, PH 1
Miami, Florida 33128
Tel. No. (305) 536-1191

# CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

## United States v. Lucia Gatta, Case No. 24-10631-H

Appellant, Lucia Gatta, files this Certificate of Interested Persons and Corporate Disclosure Statement, in this appeal, as required by 11th Cir. R. 26.1.

Acosta, Diana M.

Bagley, Katie S.

Beaty, Sean

Cannon, Hon. Aileen M.

De La Cabada, Ramon

Klugh, Richard C.

Lapointe, Markenzy

Lyons, S. Robert

Matthewman, Hon. William

Matzkin, Daniel

Otazo-Reyes, Hon. Alicia M.

Poole, Jason H.

Syverson, Joseph B.

Tobin, Parker R.

Tibbitt, Daniel J

**STATEMENT REGARDING ORAL ARGUMENT**

The defendant respectfully submits that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision making process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS. . . . . . . . . . . . . . . . . . . . . . . . . . C1

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    Course of Proceedings, Disposition Below . . . . . . . . . . . . . . . . . . . . . . . 2

    Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT AND CITATIONS OF AUTHORITY . . . . . . . . . . . . . . . . . . . 13

I.    The Convictions Should Be Reversed and the Guilty Plea Vacated, Where the Plea Was Neither Knowing, Voluntary, Nor Compliant with Fed. R. Crim. P. 11 and Due Process. . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.    Judicial participation prior to, and as a condition for conducting, the Fed. R. Crim. P. 11 plea colloquy violated the defendant's due process and Rule 11 rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    B.    The plea colloquy violated the defendant's due process and Fed.

R. Crim. P. 11 rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

C.      The error is plain . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

II.    Sentencing Violated Due Process and the Extradition Treaty . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

**CASES**:

*Boykin v. Alabama*, 395 U.S. 238 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Est. of Ungar v. Palestinian Auth.*, 396 F. Supp. 2d 376 (S.D.N.Y. 2005) . . . . . . 25

*Gall v. United States*, 552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 28

*Gordon v. United States*, 518 F.3d 1291 (11th Cir. 2008). . . . . . . . . . . . . . . . . . 23

*Maslenjak v. United States*, 582 U.S. 335 (2017) . . . . . . . . . . . . . . . . . . . . . . . . 20

*McCarthy v. United States*, 394 U.S. 459 (1969) . . . . . . . . . . . . . . . . . . . . . . 16, 20

*Molina-Martinez v. United States*, 578 U.S. 189 (2016). . . . . . . . . . . . . . . . . . . . 28

*Peugh v. United States*, 569 U.S. 530 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 28

*Puckett v. United States*, 556 U.S. 129 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Barner*, 572 F.3d 1239 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . 9

*United States v. Brown*, 117 F.3d 471 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . 22

\* *United States v. Casallas*, 59 F.3d 1173 (11th Cir. 1995) . . . . . . . . . . . . . . . . . 14

\* *United States v. Corbitt*, 996 F.2d 1132 (11th Cir. 1993) . . . . . . . . . . . . . . . . . 14

*United States v. DePace*, 120 F.3d 233 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . 21

*United States v. Diaz*, 138 F.3d 1359 (11th Cir.1998). . . . . . . . . . . . . . . . . . . . . 15

*United States v. Dohm*, 618 F.2d 1169 (5th Cir. 1980) (*en banc*). . . . . . . . . . . . 16

*United States v. Dominguez Benitez*, 542 U.S. 74 (2004) . . . . . . . . . . . . . . . . . . 24

\* *United States v. Harrell*, 751 F.3d 1235 (11th Cir. 2014) . . . . . . . . . . . . . . . . . 15

*United States v. James*, 210 F.3d 1342 (11th Cir. 2000). . . . . . . . . . . . . . . . . . . 21

*United States v. Keene*, 470 F.3d 1347 (11th Cir. 2006). . . . . . . . . . . . . . . . . . 9

*United States v. Krawczak*, 331 F.3d 1302 (11th Cir. 2003). . . . . . . . . . . . . . . 8

*United States v. Moriarty*, 429 F.3d 1012 (11th Cir. 2005). . . . . . . . . . . . . . . . 16

*United States v. Olano*, 507 U.S. 725 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Owen*, 858 F.2d 1514 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . 8

*United States v. Rauscher*, 119 U.S. 407 (1886) . . . . . . . . . . . . . . . . . . . . . . 25, 26

*United States v. Robison*, 505 F.3d 1208 (11th Cir. 2007) . . . . . . . . . . . . . . . . 9

*United States v. Sepulveda*, 115 F.3d 882 (11th Cir. 1997). . . . . . . . . . . . . . . . 28

*United States v. Utsick*, 45 F.4th 1325 (11th Cir. 2022) . . . . . . . . . . . . . 12, 26, 27

*United States v. Van De Walker*, 141 F.3d 1451 (11th Cir. 1998) . . . . . . . . . . . 9

*United States v. Vonn*, 535 U.S. 55 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 23

*Van Cauwenberghe v. Biard*, 486 U.S. 517 (1988). . . . . . . . . . . . . . . . . . . . . . 26

**STATUTORY AND OTHER AUTHORITIES**:

U.S. Const., amend. V . . . . . . . . . . . . . 1, 9, 10, 12, 13, 14, 16, 17, 21. 22, 24, 27

18 U.S.C. § 1425 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 18, 20, 21, 22, 23

18 U.S.C. § 1451(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 18

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 3742(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

26 U.S.C. § 7201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

26 U.S.C. § 7203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

31 U.S.C. § 5314 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

31 U.S.C. § 5322(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Crim. P. 11 . . . . . . . . . . . . . .   1, 3, 9, 10, 11, 13, 14, 15, 17, 21, 22, 23, 24

Fed. R. Crim. P. 11(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 22

Fed. R. Crim. P. 11(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22

Fed. R. Crim. P. 11(b)(1)(G) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Fed. R. Crim. P. 11(b)(1)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Crim. P. 11(b)(1)(O) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Crim. P. 11(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Crim. P. 11(c)(l). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Crim. P. 32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 24, 26

Fed. R. Crim. P. 52(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 23

# STATEMENT OF JURISDICTION

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231, because the defendant was charged with offenses against the laws of the United States. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which gives the courts of appeals jurisdiction over all final decisions of the district courts of the United States, and 18 U.S.C. § 3742(a), which authorizes the defendant's appeal of her sentence. The notice of appeal, DE:61, was timely filed on February 26, 2024, from the judgment and commitment order, DE:59, and the order revoking citizenship, DE:60, which were entered on February 12, 2024 and which dispose of all claims between the parties to this cause.

**STATEMENT OF THE ISSUE**

I.      Whether the guilty plea should be vacated where the district court's procedural errors—including requiring pre-hearing admissions of guilt, judicial participation in eliciting expanded factual admissions before and while conducting the plea colloquy, failing to advise the defendant of the mandatory penalty of denaturalization and consequent loss of citizen rights associated with imprisonment, misadvising the defendant as to an essential offense element, and proceeding in the absence of an adequate factual basis—violated Fed. R. Crim. P. 11 and the defendant's due process rights.

II.     Whether the defendant's due process and extradition rights were violated at sentencing.

## STATEMENT OF THE CASE

## Course of Proceedings and Disposition Below

An indictment was returned in the Southern District of Florida on February 9, 2021, charging Lucia Gatta with twelve substantive counts. DE:1. Counts 1–3 charged failure to report foreign bank account ownership on an income tax filing for the years 2012–2014, respectively, in violation of 31 U.S.C. § 5314 and 5322(a). Counts 4–7 charged tax evasion during the years 2011–2014, respectively, in violation of 26 U.S.C. § 7201. Counts 8–11 charged misdemeanor offenses of failure to file an income tax return, for the years 2011–2014, respectively, in violation of 26 U.S.C. § 7203. Count 12 charged obtaining U.S. citizenship by means of a materially false naturalization statement, in violation of 18 U.S.C. § 1425. Ms. Gatta, who also holds Italian citizenship, was arrested in Italy (where she had relocated prior to indictment) and was extradited to the United States on four of the indicted counts: Counts 8, 9, and 10 and Count 12. *See* DE:50-4(extradition order).

Ms. Gatta was brought to the Southern District of Florida to answer to the charges following her extradition from Italy. DE:33:7. Ms. Gatta soon thereafter pled guilty, without a plea agreement, to the four charges on which she was extradited, DE:21, and was sentenced on February 8, 2024 to 36 months imprisonment. DE:59. She was ordered to be stripped of her U.S. citizenship, which

she had acquired through naturalization.  DE:60.  The district court also imposed a $50,000 fine. DE:59:6.

## Statement of Facts

The facts relevant to this appeal are those arising from Ms. Gatta's extradition, guilty plea, and sentencing.

On October 19, 2023, just three weeks after Ms. Gatta's arrival in the United States and after informal communications with counsel, the district court set the case for a guilty plea hearing and ordered Ms. Gatta and the government to email the court with a joint recitation of the facts establishing Ms. Gatta's guilt of the charged offenses.  DE:15.  Each party instead filed its own statement of the inculpatory facts. DE:17, 20.

At the outset of the Fed. R. Crim. P. 11 guilty plea hearing, the district court asked the government to explain how Ms. Gatta's unilateral statement admitting a factual basis for the plea differed from the government's and what admissions Ms. Gatta had not yet made to satisfy the elements of the offenses and allegations of the indictment. DE:65:3 (district court notes that Ms. Gatta's filed factual basis statement "provides no factual context, for example, for the willfulness element").  Following the colloquy between the district court and the government regarding the needed content of Ms. Gatta's confession, the district court turned to defense counsel to seek

answers from the defense as to why Ms. Gatta had not admitted additional facts. DE:65:7 ("THE COURT: ... I understand the hesitation to want to agree to some of the specific characteristics, like sophisticated means, but why the push back on providing any additional detail beyond the skeletal references in the proposal which, as I have indicated, make it very hard for me to determine whether in fact there is a factual basis in support of the plea, in particular on the willfulness element and as to that portion of Count 12, as I have indicated?"). The district court questioned why Ms. Gatta was "admitting to Count 12 in a narrowed form, not in its full form." DE:65:9. As to Counts 8, 9, and 10, the district court inquired of defense counsel whether Ms. Gatta was admitting that "she knew the law required her to file these returns and that she intentionally failed to do so." DE65:12–13. When defense counsel initially indicated that no further willfulness admission was being made, the district court responded that "this is a bare bones plea and this does not give me great comfort that there is meaningful acceptance because it is such a shell of what the conduct is." DE:65:13–14. Defense counsel then agreed to amend the factual admission to state that Ms. Gatta "acted voluntarily and purposely, with the specific intent to violate a known legal duty, that she knew that she was required to file these returns and she intentionally chose not to, or decided not to." DE:65:14. Before addressing Ms. Gatta, the district court concluded its inquiry of defense counsel by

confirming with him "that we are proceeding forward with the additional materiality component along with the willfulness language that I mentioned earlier." DE:65:19.

The district court invited the government to explain the elements of the offenses to the defendant; and in explaining the materiality element of Count 12, the government stated that it would be required to prove at trial that "to the extent [Ms. Gatta's naturalization] was based on false statements to USCIS, ... those false statements were causally connected to ... the decision to grant her naturalization." DE:65:26. The district court explained to Ms. Gatta that her plea would stand "regardless of any Immigration consequences ... your guilty plea might entail, even if the consequence is your automatic removal from the United States." DE:67:27.

When addressing the statutory penalties Ms. Gatta faced by pleading guilty, the district court omitted any discussion of the mandatory penalty under 18 U.S.C. § 1451(e) of revocation of Ms. Gatta's United States citizenship prior to execution of the sentence and appeal, instead noting only imprisonment, supervised release, and financial penalties of her conviction of a violation of 18 U.S.C. § 1425. DE:67:29–33. The district court described the statutory penalties announced in the colloquy as the "full panoply, the full set of possible consequences that you face as a result of pleading guilty to these four counts." DE:67:32.

There was no discussion at the plea hearing of any possible impact of the

extradition terms on the sentence to be imposed.  However, the extradition was addressed in Ms. Gatta's factual basis submission, which stated:  "An Italian court ruled in August of 2023, that the United States could extradite me only as to activity alleged in counts 8, 9, 10 and 12.  Consequently, the plea and factual proffer is limited to facts relevant to those four extraditable counts."  DE:22:2.

In regard to the factual basis for the plea, the district court elicited from Ms. Gatta verbal admissions as to the willfulness and materiality matters conceded for her by counsel at the inception of the hearing, DE:65:37–44, and an admission as to Court 12 that "false statements she made to USCIS in the process of her naturalization were causally connected to the Government's decision to ultimately grant her naturalization."  DE:65:41.

In addressing a potential bond pending sentencing, the district court inquired as to the likely sentencing guideline range.  DE:65:40.  The government indicated an expected sentence of "at least 40 months," while defense counsel stated: "If the two offense characteristics are questioned, she actually scores to 12 months." DE:49, 51.

The parties filed extensive memoranda addressing the sentencing impact of Italy's denial of extradition on tax evasion and non-filing of foreign bank account holdings as well as defense objections to obstruction of justice and sophisticated means enhancements. DE:32, 33, 34, 50, 52.  The government argued against an

acceptance of responsibility reduction because the defendant had not admitted tax-related allegations charged in counts of the indictment on which Italy had denied extradition, DE:34:1–2, and argued for an obstruction of justice enhancement based primarily on Ms. Gatta's extensive exercise of extradition rights, including successfully contesting extradition as to eight of the twelve counts of the indictment. DE:52:12. The government also argued for a sophisticated means enhancement as to the failure-to-file offenses because Ms. Gatta's financial dealings reflected efforts to prevent U.S. tax recognition of her foreign income beginning in 2003, when she was a resident alien, and continuing through 2014. DE:52:11–12.

The defense objected, in reliance on the extradition proceedings, to enhancement of the sentence based on counts as to which Italy refused extradition (because there was no dual criminality). DE:50. The defense contended that the failure to file returns, considered without the tax evasion conduct that was the subject of counts of the indictment on which extradition was denied, inherently involved passive crimes with no sophistication. DE:33, 8, 10. Had the defense objections been sustained—which would have resulted in two-level reductions in the tax crime offense level (to level 18), as well as for the absence of obstruction and sophisticated means enhancements and the granting of an acceptance of responsibility reduction—the guideline range would have been 12–18 months.

At sentencing, the district court overruled the obstruction enhancement request, DE:67:188, but sustained the government's objection to any acceptance of responsibility reduction. DE:67:194 (district court concludes that Ms. Gatta's "bare-bones plea that was barely legally sufficient" was not enough to warrant a reduction for acceptance of responsibility). The district court also overruled the defense objection to a sophisticated means enhancement, DE:67:180, and the defense objection to the use of tax crimes excluded from the extradition order, thus finding a tax loss of more than $550,000. DE:67:178–79. The resulting sentencing guideline range found by the district court was 33–41 months, and the court imposed a 36-month sentence, DE:59, and revoked, over defense objection, *see* DE:28, Ms. Gatta's U.S. citizenship. DE:60; DE:67:229. As to the 36-month sentence, the district court ruled it was "the same sentence I would impose regardless of any potential error with respect to the advisory guidelines." DE:67:223.

## Standards of Review

The district court's interpretation of relevant federal criminal statutes and rules is reviewed *de novo*. *United States v. Krawczak*, 331 F.3d 1302, 1305 (11th Cir. 2003). The district court's voluntariness determinations regarding a guilty plea are reviewed *de novo*. *United States v. Owen*, 858 F.2d 1514, 1516 (11th Cir. 1988). When a defendant asserts for the first time on appeal that the district court violated

Rule 11 during a guilty plea colloquy, plain error review applies. *United States v. Vonn*, 535 U.S. 55, 58–59 (2002); Fed. R. Crim. P. 52(b). However, where the defendant contends an impingement on the constitutional right of due process, this Court has held that a determination of the minimum due process requirements of the Constitution is subject to plenary review. *See*, *e.g.*, *United States v. Robison*, 505 F.3d 1208, 1226 n. 24 (11th Cir. 2007) (holding that underlying legal errors, including due process claims, are reviewed *de novo*); *United States v. Van De Walker*, 141 F.3d 1451, 1452 (11th Cir. 1998) ("Purely legal questions relating to a defendant's claim of a constitutional violation are reviewed *de novo*.").

"[T]he district court's sentence is reviewed for reasonableness under an abuse-of-discretion standard." *Peugh v. United States*, 569 U.S. 530, 537 (2013). *See also Gall v. United States*, 552 U.S. 38, 51 (2007) (sentence is procedurally unreasonable if district court committed a significant procedural error). When a defendant challenges the district court's guidelines calculations, this Court reviews the district court's interpretation of the guidelines *de novo* and reviews its factual findings for clear error. *United States v. Barner*, 572 F.3d 1239, 1247–48 (11th Cir. 2009). With respect to *guideline* sentencing errors, an error in calculating the guidelines range is harmless if the district court disclaimed any reliance on the range as the basis for the sentence and the sentence imposed is reasonable under 18 U.S.C. § 3553(a). *See United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006).

9

## SUMMARY OF THE ARGUMENT

1.     The district court's guilty plea procedure, prior to and in conducting the plea colloquy, was fundamentally defective.  The district court's plea colloquy directly violated Federal Rule of Criminal Procedure 11(b), because the court elicited admissions of guilt from the defendant as a condition of conducting a hearing under Rule 11.  Upon advice to the district court that the defendant intended to enter a change of plea, and prior to informing the defendant of her rights, including the right to remain silent and all other essential information required by Rule 11(b), the district court directed that the defendant submit, jointly with the government, a statement of the facts supporting a finding of guilt of the offenses on which she was being prosecuted.  The due process purposes of Rule 11 preclude requiring the defendant to make such admissions prior to even having the opportunity to engage in a plea hearing.  At the same time, the district court violated the defendant's procedural rights under Rule 11(c) and undermined the due process protection goals of the Rule, in that the judicial participation in negotiating admissions by the defendant unduly intruded into the plea process and affected the defendant's plea decision.

The district court also erred in failing to address with the defendant her understanding of the prosecution and penalty limitations imposed by the extradition treaty, the meaning of the essential materiality element of the naturalization fraud

allegation, and the most extreme of the applicable mandatory penalties (the mandatory penalty of loss of citizenship and its dramatic, mandatory effect on the length of her sentence), thereby going beyond the penalties identified to the Italian courts that ordered extradition.

The procedural errors rendered the guilty plea unknowing and involuntary, particularly where later representations and arguments by defense counsel reflect a lack of clear advice to the defendant regarding mandatory penalties and the application of the extradition order in this case. Her attorney expressed his understanding that her citizenship would not be stripped before she had an opportunity to earn the sentencing reductions (akin to parole) that are guaranteed to U.S. citizens in the custody of the Bureau of Prisons. DE:28. Defense counsel also appeared to have an understanding diametrically opposite to that offered at sentencing by the government regarding extradition rights Ms. Gatta lost by pleading guilty. These factors, in combination, establish that the district court prejudicially erred when it accepted Ms. Gatta's guilty plea. The Rule 11 colloquy failed to achieve the purpose of determining that Ms. Gatta entered the guilty plea knowingly and voluntarily.

2. The district court erred by proceeding with a Fed. R. Crim. P. 32 adversarial process in order to impose presumptive sentence enhancements for

11

conduct about which extradition was denied by Italy. Although a sentencing court may, consistent with due process, base a sentence on any reliable evidence, the denial of extradition as to criminal allegations precludes proceeding against the extraditee in an adversarial process—whether civil, administrative, or hybrid criminal process—as to the matter for which extradition is barred. A different rule may apply where extradition has not expressly been refused by the foreign country for a fraud scheme or conspiracy, *see*, *e.g.*, *United States v. Utsick*, 45 F.4th 1325, 1333–35 (11th Cir. 2022). However, in the context of the present case, placing the defendant in a position of forced participation in an adversarial process to resolve criminal charges barred from extradition was error. All of the sentencing enhancements and grounds for upward variance in this case resulted from the adversarial proceeding under Rule 32 on claims of criminality that contravened the extradition bar. The sentencing enhancements and alternative variance should therefore be reversed.

## ARGUMENT AND CITATIONS OF AUTHORITY

I.   **THE CONVICTIONS SHOULD BE REVERSED AND THE GUILTY PLEA VACATED, WHERE THE PLEA WAS NEITHER KNOWING, VOLUNTARY, NOR COMPLIANT WITH FED. R. CRIM. P. 11 AND DUE PROCESS.**

There were multiple constitutional, statutory, and rule violations that invalidate the guilty pleas.

### A.

### Judicial Participation Prior to, and as a Condition for Conducting, the Fed. R. Crim. P. 11 Plea Colloquy Violated the Defendant's Due Process and Rule 11 Rights.

Rule 11(c)(l) of the Federal Rules of Criminal Procedure directs that the district court will not participate in any discussions to reach a plea agreement. The district court violated this injunction by first setting, as a precondition to obtaining a hearing on a change of plea, that the defendant admit factual guilt and then, in a hearing where the defendant was present, engaging in a form of negotiation with defense counsel that elicited additional admissions on behalf of the defendant so as to proceed with a Rule 11 plea proceeding.

Fed. R. Crim. P. 11(c)(l) provides, in relevant part, as follows: " An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court *must not participate in*

13

*these discussions.*") (emphasis added). Rule 11's prohibition on court participation in plea negotiations is designed to entirely eliminate judicial pressure from the plea bargaining process. *United States v. Casallas*, 59 F.3d 1173, 1178 (11th Cir. 1995); *United States v. Corbitt*, 996 F.2d 1132, 1135 (11th Cir. 1993). The district court's actions in drawing out, as a condition for having a plea hearing at all, sufficient admissions by defense counsel on the defendant's behalf to satisfy the district court of the defendant's guilt, is inconsistent with Rule 11 and is not justified as an efficiency-based deviation from Rule 11's procedural requirements.

The district court, in a docket text order, DE:15, elicited defense admissions amounting to a confession *prior* to commencing a plea hearing, contrary to Fed. R. Crim. P. 11(b)(1), without advising the defendant regarding rights under Rule 11 as well as constitutional rights that might be waived by admissions to facts establishing guilt. When the defendant, in her pre-hearing admissions, did not concur in some of the government's allegations, the district court went forward with a hearing, but did not proceed to engage the defendant in a plea colloquy until her attorney had agreed to the admissions that the district court indicated would be necessary. In so doing, the district court violated the defendant's procedural rights under Rule 11 and undermined the due process protection goals of the Rule, in that the judicial participation in negotiating admissions by the defendant unduly intruded into the plea

process. The prejudice was even greater where, despite negotiating the facts that the defendant would admit to, the district court at sentencing used the "bare-bones" and "barely legally sufficient" nature of the admissions, DE:67:194, as a basis to withhold from the defendant any credit for acceptance of responsibility regarding the counts on which extradition was granted.

"The district court's role under Rule 11 is to evaluate a plea agreement once it has been reached by the parties and disclosed in open court." *United States v. Diaz*, 138 F.3d 1359, 1363 (11th Cir.1998). "This limited role exists because 'statements and suggestions by the judge are not just one more source of information to plea negotiators; they are indications of what the judge will accept, and one can only assume that they will quickly become the focal point of further discussions.'" *United States v. Harrell*, 751 F.3d 1235, 1239 (11th Cir. 2014) (quoting *Diaz*, 138 F.3d at 1363); *id*. (reversing on plain error review where "once the district court opened the door to plea-related discussions, it impermissibly engaged in constructing or shaping a plea for [the defendant] and commented upon terms that it would accept").

Additionally, the elicitation of admissions of guilt prior to going forward with a Rule 11 hearing undermines constitutional protections against self-incrimination and diminishes the effectiveness of Rule 11's remaining protections of the defendant's rights. Rule 11 contemplates that no admissions of guilt are to be elicited

from the defendant absent the carefully designed scheme laid out by the Rule.

When a defendant enters a guilty plea, she waives a panoply of constitutional rights. *See Boykin v. Alabama*, 395 U.S. 238, 243 & n.5 (1969); *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005). One of the most essential such rights is the right not to provide any incriminating statements. In order for the waiver of rights to be valid and the plea effective, the record must reflect that the defendant entered the plea knowingly and voluntarily. *Boykin,* 395 U.S. at 242–43 & n.5. "'[I]f a defendant's guilty plea is not … voluntary and knowing, it has been obtained in violation of due process and is therefore void.'" *Id*. at 243 n.5 (quoting *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). The district court's failure to advise the defendant of the right not to incriminate herself when written and oral admissions of guilt were being elicited, albeit upon questioning from, and with filings by, her counsel, left the defendant in no position to engage independently in a plea colloquy, where the guilt of the defendant had been negotiated through intervention by the district court. *See United States v. Dohm*, 618 F.2d 1169, 1175 (5th Cir. 1980) (*en banc*) (*Miranda* warnings are required, even as to judicial inquiries, in order to assure defendant "knowingly and intelligently waive[s] his fifth amendment right to avoid self-incrimination"; barring use of statements elicited at pretrial hearing in violation of *Miranda*); *McCarthy*, 394 U.S. at 466 (entry of guilty plea "waives ... privilege

16

against compulsory self-incrimination"; thus, plea proceeding must insure waiver is knowing and voluntary).

The judicial pre-plea process in this case unduly trenched on the Fifth Amendment protections facilitated by Rule 11 and ultimately amounted to judicial plea negotiation and the defendant's rights waiver without advice of rights by the district court, warranting reversal.

## B.

### The Plea Colloquy Violated the Defendant's Due Process and Fed. R. Crim. P. 11 Rights.

In conducting the plea colloquy, after the district court worked with the prosecution and defense counsel to come to agreement on the defendant's factual admissions, the district court violated three additional provisions of Rule 11. First, the district court failed to advise the defendant of the most severe mandatory penalty of her plea (loss of citizenship) and that such penalty was an immediate consequence of the mere entry of a guilty plea, which meant that the non-citizen defendant would have to serve her sentence in a prison (not a camp), that her ability to earn parole-like reductions of her sentence of as much as 16 months would immediately be forfeited, and that her custody would then be extended when she was turned over to immigration authorities. Second, the district court did not meaningfully explain the

applicability of the materiality element of 18 U.S.C. § 1425 to the denial of the commission of misdemeanor offenses. Third, the district court did not elicit precisely what prior crimes—i.e., by date and statute of conviction—the defendant had failed to disclose in her citizenship interviews and whether the defendant actually believed in 2011 that she had committed such offenses prior to 2011 and also failed to establish the requisite factual basis.

1.    Pursuant to 18 U.S.C. § 1451(e), revocation of the defendant's citizenship was a mandatory penalty upon her conviction of naturalization fraud under 18 U.S.C. § 1425. The district court failed to alert the defendant to the severe and immediate mandatory penalties of citizenship revocation, which not only constituted the loss of something precious to and long sought by the defendant, but effectively doubled the length of her imprisonment (by eliminating the parole-like benefits of the First Step Act) and making the conditions of confinement upon imposition of the sentence more severe. The failure to advise the defendant constituted significant error.

Fed. R. Crim. P. 11(b)(1)(O) provides, as to a defendant "who is not a United States citizen," that the district court must advise that the defendant "may be removed from the United States, denied citizenship, and denied admission to the United States in the future." Further, Rule 11(b)(1)(I) requires that the district court advise the

defendant of "any mandatory minimum penalty." The convergence of those two rules in this case compelled that the district court advise the defendant that upon her plea, and without any further proceeding or at the latest at the time of sentencing, she would be stripped of her U.S. citizenship.

Exile of a citizen has long been known as a fundamentally severe punishment. Under present federal statutes, that punishment is compounded by its effect on the length of time a defendant must serve in prison to complete the sentence and the conditions of confinement. Non-citizens are ineligible for minimum security BOP facilities (camps) and must serve their sentences in prisons. Even more importantly, under the Fair Sentencing Act, the sentence reduction benefits of good conduct are withheld from non-citizens facing a deportation order. *See* 18 U.S.C. § 3632; 28 C.F.R. § 523.42.

These punishments, had they been explained, were sufficient to warrant plea hesitation by the defendant and, in combination with other errors in the plea proceedings, are sufficiently substantial to call into question the voluntariness of the plea, including because of the defendant's damaged psychological condition and the short period of time (approximately one month) between her extradition and her plea hearing. *See* DE:67:155–62 (testimony of psychologist Dr. Merry Haber).

    2.    The district court's explanation of the materiality element of the Count

12 offense was inadequate to properly place the defendant on notice of the scope of the statute, so that she could determine whether any offense she committed before 2011 rose to the level that would make her ineligible for naturalization. The explanation given by the district court did not focus on the eligibility component of the materiality element.

In *Maslenjak v. United States*, 582 U.S. 335 (2017), the Supreme Court held that to obtain a conviction under section 1425, the government must show that an illegal act by the defendant played some role in his or her acquisition of citizenship. *See id.* at 338. "When the illegal act is a false statement, that means demonstrating that the defendant lied about facts that would have mattered to an immigration official, because they would have justified denying naturalization or would predictably have led to other facts warranting that result." *Id.* Furthermore, "the proper causal inquiry under § 1425(a) is framed in objective terms: To decide whether a defendant acquired citizenship by means of a lie, a jury must evaluate how knowledge of the real facts would have affected a reasonable government official properly applying naturalization law." *Id.* at 347.

The Supreme Court has recognized that "because a guilty plea is an admission of all the elements of a formal criminal charge, it *cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts*." *McCarthy*,

394 U.S. at 466 (emphasis added); *see United States v. James*, 210 F.3d 1342, 1345-46 (11th Cir. 2000) (complex aspects of Travel Act charge required greater explanation at plea colloquy, contributing to finding of Rule 11 error); *United States v. DePace*, 120 F.3d 233, 237 (11th Cir. 1997) (recognizing that charges of a more complex nature may require more explication by district court at plea colloquy in order to satisfy Rule 11).

The materiality element conveyed to the defendant at the plea colloquy as to the sole felony count of conviction was inaccurate and diminished the actual burden faced by the government under § 1425. Importantly, the term "causally connected" was used, without any reference to whether disclosure of an uncharged, time-barred misdemeanor tax matter would have any impact on naturalization. The failure to put the pointed question to the defendant, or even to instruct the defendant that, as a matter of law, failing to disclose even a time-barred misdemeanor involving no harm or loss is material, left the defendant inadequately advised of the nature of the charge so that she could evaluate whether she was guilty of a felony offense. Moreover, it is unclear from the record whether the government took the position that any misdemeanor is enough to block a citizenship application. The violation of this fundamental component of Rule 11 and due process warrants reversal. *See* Rule 11(b)(1)(G) (duty to advise adequately as to the nature of the charge).

This Court has repeatedly held that "a guilty plea is not knowingly and voluntarily made when the defendant has been misinformed" as to a crucial aspect of his case. *See United States v. Brown*, 117 F.3d 471, 473 (11th Cir. 1997). The district court's violations of the defendant's due process and Fed. R. Crim. P. 11 rights compel reversal and remand for further proceedings.

3.      The district court did not establish a factual basis for the Count 12 offense where there was no showing, much less an admission by the defendant, of any specified crime prior to 2011 when she applied for citizenship. Absent an elicitation of what, if any, prior crimes were committed by the defendant, there was no factual basis for the false-statement premise for conviction of a § 1425 offense.

Rule 11(b) provides a roadmap for district courts to follow to ensure that a defendant understands essential matters pertaining to her guilty plea. Rule 11(b)(1) provides in relevant part: "Before the court accepts a plea of guilty … the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands" multiple categories of information. *Id*. When enacted, Rule 11(b) substantially restated existing law that addressed the "duty of [the] court to ascertain that [the] plea of guilty is intelligently and voluntarily made." Rule 11, Advisory Committee Notes, 1944 Adoption. Rule 11 "imposes upon a district court the obligation and

responsibility to conduct a searching inquiry into the voluntariness of a defendant's guilty plea." *Gordon v. United States*, 518 F.3d 1291, 1297 (11th Cir. 2008) (internal quotation marks omitted).

In regard to the § 1425 offense, the district court relatedly failed to define the limits of the count of conviction in relation to the terms of extradition (which excluded categories of potential criminal liability. The defendant was insufficiently advised of the extent of the criminal conduct that the district court apparently believed was the subject of the plea. The absence of a factual basis, much less one elicited from the defendant, as to exactly what crime she hid in obtaining citizenship rendered the plea factually insufficient and warrants reversal.

## C.

### The Error Is Plain.

A challenge to guilty plea proceedings under Fed. R. Crim. P. 11 that was not raised in the district court is reversible on appeal for plain error. *See United States v. Vonn*, 535 U.S. 55, 59 (2002). The record here warrants a finding of plain error. *See Puckett v. United States*, 556 U.S. 129, 135 (2009) (applying plain-error standard to unpreserved plea claim); *see also United States v. Olano*, 507 U.S. 725, 733 (1993) (instructing that "[m]ere forfeiture, as opposed to [informed and voluntary] waiver, does not extinguish an 'error' under Rule 52(b)"). First, as the district court's focus

on the bare-bones and barely-sufficient nature of the factual basis and the defendant's

psychological report indicating she did not believe she had done anything wrong

showed, but for the foregoing defectiveness of the defendant's plea colloquy, there

was more than a reasonable probability that the defendant would not have entered the

guilty plea given the undisclosed and mistaken premises on which it was based. *See*

*United States v. Dominguez Benitez*, 542 U.S. 74 (2004). Given the core violations

of due process and Rule 11 and the surrounding circumstances, showing the

psychological instability of the defendant, the failure to accept responsibility

according to the district court, and the gravity of the errors, the convictions should be

reversed and the plea vacated.

## II.   SENTENCING VIOLATED DUE PROCESS AND THE EXTRADITION TREATY.

The district court erred in concluding, following an adversarial hearing

initiated by the government's submission to the United States Probation Office of

extradition-barred allegations of criminal conduct by Ms. Gatta, that sentencing

enhancements and grounds for upward variance were established by the government.

Because felony tax fraud conduct litigated in the Fed. R. Crim. P. 32 adversarial

hearing were in fact counts of indictment for tax offenses that Italy determined could

not be pursued (including because they were precluded by the doctrine of dual

criminality), use of such adversarial proceedings on the allegations to reach and enter a sentencing judgment was error.

The error here was unlike prosecutions in which conduct that is not expressly the subject of a charge on which extradition is refused is incorporated into the sentencing process. Instead, in this case, Italy expressly barred prosecution for the felony tax crimes that formed the basis for the guideline sentence enhancements and alternative variance. The government's argument, adopted by the district court, that such felony tax conduct could nevertheless shape the sentencing for tax misdemeanors that incorporated none of those crimes, rendered the extradition order's limits illusory.

Pursuant to the reasoning of the Supreme Court in *United States v. Rauscher*, 119 U.S. 407, 420–21 (1886), an extradited defendant effectively has immunity even from a civil judgment arising from compelled adversarial proceedings on any matter other than the extradited criminal allegations. Thus, in her entry of a guilty plea, defendant Gatta invoked the limitations of the extradition and asserted her consent to a finding of guilt based solely on the conduct of extradition, *see* DE:22:2, not additional crimes. *See also Est. of Ungar v. Palestinian Auth.*, 396 F. Supp. 2d 376, 382 (S.D.N.Y. 2005) ("Under the 'principle of specialty,' foreign citizens extradited to the United States to face criminal charges may not be served with process in an

unrelated civil matter.") (citing *Rauscher*, 119 U.S. at 430).

In *Van Cauwenberghe v. Biard*, 486 U.S. 517 (1988), the Supreme Court held the right of the extradited defendant to limit adversarial proceedings beyond those authorized by the extradition order "should be characterized as the right not to be subject to a binding judgment of the court," and so understood, it could therefore "be effectively vindicated following final judgment." *Id.* at 526–527.

Because Rule 32 is an adversarial process on proposed guideline enhancements, and because the outcome of that adversarial process as to crimes that were off limits under the extradition order resulted in an elevated sentence, including an elevated alternative sentence premised on the same proceeding, but excising the guidelines themselves, the sentencing judgment is inconsistent with the extradition order and should be reversed.

Unlike the circumstances in *United States v. Utsick*, 45 F.4th at 1333–35, where the relevant sentencing proceedings concerned the scope of the fraud scheme to which he had admitted in his plea and plea agreement, the extradition of defendant Gatta did not include processing her based on adversarial proceedings as to felony tax charges. To the extent this Court finds that the defendant's rule–of–specialty sentencing argument is foreclosed by *Utsick*—despite the procedural distinction that Italy expressly refused extradition on the tax evasion and related crime

26

allegations—Appellant nevertheless preserves this issue for Supreme Court or other review.[1]

Defendant Gatta should not, under the terms of the extradition, have been placed in the position of having to invoke her Fifth Amendment and other rights or to litigate matters barred from adversarial pursuit in the United States by the extradition. The terms of the extradition barring the receiving state from causing the extraditee to be "'detained, tried or punished,'" for matters going beyond the charges of extradition, reasonably precluded any adversarial process—even civil, administrative, or guideline sentencing adversarial proceedings—against the defendant regarding matters about which extradition was refused by Italy. DE:33:7 (quoting Italy–U.S. extradition treaty).

The district court erred in concluding that sentencing enhancements and grounds for upward variance could be based on conduct underlying counts of indictment for tax conduct that Italy determined could not be pursued, in light of the doctrine of dual criminality. Unlike prosecutions in which conduct that is simply not the subject of a charge on which a defendant is extradited is used for sentencing purposes, in this case, Italy expressly barred prosecution for the felony tax crimes that formed the basis for the sentence.

---

[1] Defendant Utsick did not seek certiorari review.

27

Because in the absence of such matters, the 36-month sentence was unreasonable, the sentence should be reversed. The error here was compounded by the district court's reliance on a pre-extradition psychological analysis regarding the offenses on which extradition was denied. DE:67:155–70. The district court found that a psychological report prepared presentencing and based in large part on interaction with the defendant in Italy failed to show her acceptance of responsibility for the tax evasion and related extradition-barred conduct. DE:67:223.

When determining a defendant's sentence, a district court must *first* accurately determine the applicable sentencing guidelines range. *See Peugh v. United States*, 569 U.S. 530, 537 (2013); *Gall v. United States*, 552 U.S. 38, 49 (2007). Sentencing courts "'must *begin* their analysis with the Guidelines and *remain cognizant of them throughout the sentencing process*.'" *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016) (quoting *Peugh*, 133 S. Ct. at 2083) (emphasis added). Further, "courts must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines." *United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997). In light of the foregoing, the sentence must be vacated.

## CONCLUSION

For the foregoing reasons, the Court should vacate Lucia Gatta's conviction and sentence and remand for further proceedings.

Respectfully submitted,

 s/ Richard C. Klugh
RICHARD C. KLUGH, ESQ.
Attorney for Appellant
40 N.W. 3rd Street, PH 1
Miami, Florida 33128
Telephone No. (305) 536-1191
Facsimile No. (305) 536-2170

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7). According to the WordPerfect program on which it is written, the countable pages of this brief contain 6,245 words.

 s/ Richard C. Klugh
Richard C. Klugh

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of August, 2024, the foregoing was filed electronically and thereby served upon counsel of record for the Appellee, U.S. Department of Justice Attorney Jason H. Poole, P.O. Box 972, Washington, DC 20044.

 s/ Richard C. Klugh
Richard C. Klugh